**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| BILLY A. BURKS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-07-360-D |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| COMMISSIONER OF THE SOCIAL ) | |
| SECURITY ADMINISTRATION, ) | |
| ) | |
| Defendant. ) | |

**REPORT AND RECOMMENDATION**

Plaintiff, Mr. Billy A. Burks, seeks judicial review of a denial of disability insurance benefits by the Social Security Administration. This matter has been referred for proposed findings and recommendations. *See* 28 U.S.C. § 636(b)(1)(B) and (C). It is recommended that this Court reverse the Commissioner's decision and remand the case for further proceedings.

**I.     Agency Proceedings**

Plaintiff filed an application for disability insurance benefits on August 9, 2004, alleging an inability to work since July 14, 2004. *See* Administrative Record [Doc. #13] (AR) at 59-61. Plaintiff's applications were denied initially and on reconsideration. AR 30-31. Following a hearing before an Administrative Law Judge, the ALJ found that Plaintiff was not disabled. AR 11-22. The Appeals Council denied Plaintiff's request for review, AR 5-8, making the decision of the ALJ the final decision of the Commissioner.

## II.     The ALJ's Decision

The ALJ applied the five-step sequential evaluation process required by agency regulations. *See Fisher-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); 20 C.F.R. § 404.1520. She first determined that Plaintiff had not engaged in substantial gainful activity during the relevant period. AR 16. At step two, the ALJ determined that Plaintiff suffers from severe impairments including seizure disorder, ACL tear of the right knee, and heart problems. AR 16. But the ALJ found that Plaintiff's mental impairments are not severe. AR 17. At step three, the ALJ found no impairment or combination of impairments that meets or equals the criteria of any listed impairment described in the regulations. AR 17. At step four, the ALJ determined Plaintiff's residual functional capacity (RFC):

> [C]laimant has the residual functional capacity to perform sedentary work. He can occasionally climb, balance, stoop, kneel, crouch, and crawl. He cannot work around significant unprotected heights, potentially dangerous, unguarded moving machinery, or work as a commercial driver. He can perform simple to detailed but not complex job instructions.

AR 17. The ALJ determined that Plaintiff cannot return to his past relevant work as "a manager, furniture sales, tire sales, welding equipment sales, store supervisor, insurance sales, convenience store clerk, and produce clerk" as these jobs were performed at the light to medium exertional level. AR 20. At step five, the ALJ relied on vocational expert testimony and determined that Plaintiff has acquired transferrable work skills including the abilities to supervise, plan, organize, direct, control, evaluate others, schedule, sell, perform customer service, keep records, write reports, collect, perform inventory ordering and stocking, and keep books. AR 20. The ALJ determined that Plaintiff could perform

sedentary, semi-skilled work such as records clerk, telemarketer and timekeeper, and that these jobs exist in significant numbers in the national economy. AR 21.

### III. Standard of Review

Judicial review of the Commissioner's final decision is limited to determining whether the factual findings are supported by substantial evidence in the record as a whole, and whether the correct legal standards were applied. *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) (quotation omitted). A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it. *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004). The court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, but the court does not reweigh the evidence or substitute its own judgment for that of the Commissioner. *Hackett*, 395 F.3d at 1172 (quotations and citations omitted).

### IV. Issues Raised on Appeal

Plaintiff contends: (1) that the ALJ committed legal error in failing to properly consider and weigh the opinions of his treating physician regarding his seizure disorder and associated mental impairments, (2) that the ALJ committed legal error in failing to fulfill her duty to properly develop the record by obtaining records from Plaintiff's in-patient mental health treatment and by ignoring probative evidence of severe mental impairment, and (3)

3

that the ALJ's step-five determination is not supported by substantial evidence in that the jobs identified by the ALJ all involved reasoning levels beyond the limitations of Plaintiff's RFC.

## V.     Analysis

### A.     The ALJ's Treating Physician Analysis

On February 24, 2006, Dr. Tim K. Smalley, Plaintiff's treating physician since April 2005, completed a Seizures Residual Functional Capacity Questionnaire. AR 282-285. Responding to the directions on the questionnaire, Dr. Smalley stated that Petitioner had experienced his last three seizures on October 31, 2005, November 26, 2005, and December 29, 2005. AR 282. These seizures occurred approximately once a month even though Plaintiff was compliant with taking seizure medication. AR 283. Dr. Smalley noted that Plaintiff's seizures could occur at any time and were precipitated by stress. AR 283. Dr. Smalley reported that after a seizure, Plaintiff experiences confusion, exhaustion, irritability, severe headache, muscle strain and paranoia for up to 24 hours after the seizure. AR 283. It was Dr. Smalley's opinion that Plaintiff's seizures would disrupt the work of co-workers, would require Plaintiff to be more closely supervised than unimpaired workers, and would preclude him from working at heights, working with power machines, operating a motor vehicle and taking a bus alone. AR 284. Dr. Smalley noted that Plaintiff has other associated mental problems including depression, irritability, social isolation, poor self-esteem, short attention span, memory problems, behavior extremes and suicidal thoughts. AR 284. In response to a question regarding the potential frequency of missed work "as a

result of the impairments or treatment," Dr. Smalley marked "more than four days per month." AR 285.

Under the "treating physician rule," greater weight is generally given to the opinions of sources of information who have treated the claimant than of those who have not. *See Hackett*, 395 F.3d at 1173-1174 (*citing Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004). First, the ALJ must determine whether the opinion of a treating source should be given controlling weight. *Id.* at 1174. Using a sequential analysis, an ALJ is required to give the opinion of a treating physician controlling weight if it is both: (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques;" and (2) "consistent with other substantial evidence in the record." *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (quotation omitted). If an opinion fails to satisfy either of these conditions, it "means only that the opinion is not entitled to 'controlling weight,' not that the opinion should be rejected." *Id.* (*quoting* SSR 96-2p, 1996 WL 374188, at *4). Non-controlling opinions "'are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927.'" *Id.* Those factors are: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Id.*

at 1301 (quotation omitted). If the ALJ chooses to reject a treating physician's opinion entirely, the ALJ must set forth specific legitimate reasons for doing so. *See Langley v. Barnhart*, 373 F.3d at 1119. As explained in policy interpretations regarding treating source evidence:

> Because treating source evidence (including opinion evidence) is important, if the evidence does not support a treating source's opinion on any issue reserved to the Commissioner and the adjudicator cannot ascertain the basis of the opinion from the case record, the adjudicator must make "every reasonable effort" to recontact the source for clarification of the reasons for the opinion.

Soc. Sec. Rul. 96-5p, 1996 WL 374183 at *6-7.

In this case, the ALJ stated:

Dr. Smalley's opinion that [Plaintiff] would be absent from work more than four days per month **due to seizures** is not consistent with his report that the claimant averages one seizure a month.

AR 20 (emphasis added). The ALJ's characterization of Dr. Smalley's opinion does not comport with the information garnered from the questionnaire. The statement to which Dr. Smalley responded was not limited to work days missed because of seizures. Rather, the statement encompassed work days missed because of any and all of Plaintiff's impairments, both physical and mental. Therefore, the ALJ's conclusion that "[t]he frequency of seizures and resultant limitations are inconsistent with Dr. Smalley's own treatment records," AR 20, does not take into consideration days of work which, in Dr. Smalley's opinion, would be missed because of Plaintiff's other impairments and limitations. Moreover, the ALJ stated only that Dr. Smalley's opinions were "considered but not given controlling weight." AR

6

20. The ALJ failed to complete the analysis of factors set forth in the regulations and failed to state what weight Dr. Smalley's opinion was afforded. It is recommended that this case be remanded for further consideration and discussion of Dr. Smalley's opinion in accordance with the rules governing consideration of treating physician opinions. It may be necessary for the Commissioner to recontact Dr. Smalley in accordance with SSR 96-5p, for clarification and additional information.

### B.     The ALJ's Duty to Develop the Record and Consider Probative Evidence

The ALJ concluded that Plaintiff's mental impairments are not severe despite the psychiatric examination report of a consultative physician, Dr. Theresa S. Garton, who evaluated Plaintiff's Global Assessment of Functioning (GAF) rating[1] at 35 and stated that his examination results were consistent with bipolar disorder type II. AR 242-245. Additionally, the ALJ did not obtain psychiatric treatment records for the three weeks of in-patient psychiatric care Plaintiff received in the summer of 2005, nor did she discuss Dr. Smalley's notes pertaining to the nature of Plaintiff's mental problems. Plaintiff contends that the ALJ's failure to develop the record and consider probative evidence of severe mental impairments requires reversal.

---

[1] The Global Assessment of Functioning (GAF) is a subjective determination based on a scale of 100 to 1 of "the clinician's judgment of the individual's overall level of functioning" at the time of evaluation. American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders (4th ed. 2000) ("DSM ") at 30-32. A GAF level of 30-40 is defined as "[s]ome impairment in reality testing or communication . . . OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood." DSM-IV at 32.

An ALJ has a duty to ensure that the administrative record is adequately developed:

> This is true despite the presence of counsel, although the duty is heightened when the claimant is unrepresented. The duty is one of inquiry, ensuring that the ALJ is informed about facts relevant to his decision and [learns] the claimant's own version of those facts.

*Henrie v. U.S. Dept. of Health & Human Services*, 13 F.3d 359, 360-361 (10th Cir. 1993) (internal quotations and citations omitted; alteration in original). In developing an adequate record, an ALJ generally has a duty to obtain pertinent medical records that come to his attention during the course of the hearing. *See Madrid v. Barnhart*, 447 F.3d 788, 790 (10th Cir. 2006). In this case, Plaintiff testified at the hearing that he was seen by psychiatrists in 2005 after he attempted suicide. AR 377. Plaintiff's status as an in-patient for behavioral health care is specifically referenced in Dr. Smalley's medical records. AR 290. Yet the records of Plaintiff's in-patient psychiatric treatment in 2005 are conspicuously absent from the administrative record. It does not appear that the ALJ made any effort to obtain the records. On remand, the Commissioner should attempt to obtain the in-patient psychiatric records in order to fully and fairly develop the record regarding Plaintiff's mental impairments.

Plaintiff also contends that the ALJ erred as a matter of law in failing to consider and discuss his GAF score of 35, as determined by Dr. Garton. AR 242-245. Dr. Garton also stated that Plaintiff "describes significant depression and does appear depressed during the interview," and that Plaintiff "would seem to have some impairment as a result of this depression." AR 245. Despite this evidence, the ALJ determined that Plaintiff's mental

impairments are not severe. Plaintiff contends that this finding is not based on substantial evidence.

In determining that Plaintiff's mental impairments are not severe, the ALJ relied on the consultative examiner's statement that Plaintiff's thought processes "were logical and goal oriented with no auditory or visual hallucinations." AR 16. The ALJ also noted that Plaintiff had reported to the examiner that he "had never been hospitalized for psychiatric reasons." AR 16. Further, the ALJ relied on Plaintiff's daily activities which, according to the ALJ, were limited only by Plaintiff's physical impairments. AR 17.

It is well-established that an ALJ may not rely solely on favorable evidence without giving reasons for discounting evidence upon which the ALJ chose not to rely. *Clifton v. Chater*, 79 F.3d 1007, 1009-1010 (10th Cir. 1996) (ALJ must discuss uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects). Further, an ALJ "may not pick and choose through a medical opinion taking only those parts that are favorable to a finding of nondisability." *Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004). *See also Hamlin v. Barnhart*, 365 F.3d 1208, 1217 (10th Cir. 2004) (stating that an ALJ must discuss significantly probative evidence he rejects).

Although a GAF rating is not an absolute determiner of a person's ability to work, *see Stalvey v. Apfel*, No. 98-5208, 2001 WL 50747 at *2, (10th Cir. Aug. 18, 1999) (unpublished op.), Plaintiff's low GAF rating is significant probative evidence suggesting serious social and occupational limitations. The Tenth Circuit has stated that "GAF scores of 50 or less do suggest an inability to keep a job." *Oslin v. Barnhart*, 69 Fed. Appx. 942,

947 (10th Cir. Jul. 17, 2003) (unpublished op.). *See also Simien v. Astrue*, No. 06-5153, 2007 WL 1847205 at *2 (10th Cir. Jun. 28, 2007) (GAF ratings ranging from 41-50 indicate serious impairments in social or occupational functioning) (unpublished op.). The ALJ should have considered and discussed Plaintiff's GAF score of 35. Further, it appears that the ALJ's finding regarding Plaintiff's mental impairments is also contradicted by other significant evidence in the record not addressed by the ALJ, including Dr. Smalley's descriptions of Plaintiff's mental problems associated with his seizure disorder.

The ALJ committed legal error by failing to develop the record and by ignoring significantly probative evidence of Plaintiff's mental impairments, and these errors require remand for further proceedings.

### C.    The ALJ's Step-Five Findings

Plaintiff contends that the VE's testimony, upon which the ALJ's step-five findings are based, is inconsistent with the descriptions of jobs in the Dictionary of Occupational Titles (DOT).[2] Specifically, Plaintiff states that the jobs identified by the VE all require a reasoning level of three: the ability to "apply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form" and "deal with problems involving several concrete variables in or from standardized situations." *See* DOT § 215.362-022 (Timekeeper), 1991 WL 671904; DOT § 299.357-014 (Telephone Solicitor)

---

[2] It is undisputed that the VE misidentified the DOT number for the job of records clerk. The VE cited the number as 203.582-066 which actually is the DOT number for the job of typist. *See* AR 382.

1991WL 672624. Plaintiff contends that these jobs are inconsistent with the RFC established by the ALJ which limits Plaintiff to jobs that do not require the performance of complex job instructions. AR 17. This point has merit. In *Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005), the Tenth Circuit found that an RFC limiting a claimant to "'simple and routine work tasks'" appeared inconsistent with jobs requiring a reasoning level of 3 and remanded the case to allow the ALJ to address the apparent conflict. The same need arises here.[3] On remand, the ALJ should resolve the apparent conflicts between the testimony of a VE and job descriptions in the DOT and the Plaintiff's RFC, in compliance with applicable agency rulings and regulations. *See* SSR 00-4p, 2000 WL 1898704.

---

[3]The Commissioner argues that remand is not required. According to the Commissioner, when a claimant, like Plaintiff, is restricted to jobs without complex instructions, an ALJ need not consider the reasoning level when determining whether the claimant can perform a given job, but instead should consider the specific vocational preparation (SVP) level which measures the time needed to complete training for the job. The Commissioner relies on *Chavez v. Barnhart*, No. 03-2298, 126 Fed. Appx. 434 (10th Cir. Feb. 3, 2005), an unpublished opinion, for this proposition. In *Chavez*, the ALJ found the claimant to be limited to jobs involving only one- or two-step processes. At step five of the sequential evaluation, the ALJ identified "parking lot attendant" as a job the claimant could do. The claimant argued that the training required to learn the job of parking lot attendant, which has an SVP of 2 ("Anything beyond a short demonstration up to and including one month"), conflicted with the one- or two-step processes to which he was restricted. In rejecting the claimant's argument, the Tenth Circuit noted that an SVP of 2 corresponds to unskilled work. *Chavez* is not applicable to the instant case, however, because the Tenth Circuit's holding in *Chavez* rejected only the claimant's argument that his RFC was inconsistent with a job with an SVP rating of 2, *i.e.*, whether the claimant could complete training for the job. In this case, however, the issue raised is whether the jobs identified by the VE required the ability to reason beyond the claimant's ability. It bears noting that the reasoning level required of a parking lot attendant is only 2 – the ability to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions [and] [d]eal with problems involving a few concrete variables in or from standardized situations." *See* DOT § 915.473-010 (parking lot attendant), 1991 WL 687685.

11

## RECOMMENDATION

It is recommended that the Commissioner's decision be reversed and remanded for further proceedings consistent with this Report and Recommendation.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to object to this Report and Recommendation. *See* 28 U.S.C. § 636. Any such objections must be filed with the Clerk of the District Court by April __3rd__, 2008. *See* LCvR72.1. The parties are further advised that failure to make timely objection to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein. *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

## STATUS OF REFERRAL

This Report and Recommendation terminates the referral by the District Judge in this matter.

ENTERED this __14th__ day of March, 2008.

_____
VALERIE K. COUCH
UNITED STATES MAGISTRATE JUDGE